UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI ACKERMAN PAPP,

            Plaintiff,                                              Hon. Paul L. Maloney

v.                                                                  Case No. 1:06-CV-832

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 24 years of age at the time of the ALJ's decision. (Tr. 23, 51). She successfully completed high school and has no past relevant work experience. (Tr. 21, 65).

Plaintiff applied for benefits on October 20, 2003, alleging that she had been disabled since October 2, 2002, due to depression and anxiety. (Tr. 51-53, 59, 344-46). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-50, 347-60). On July 14, 2005, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, Roy Welton. (Tr. 363-408). In a written decision dated March 20, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 14-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2004. (Tr. 14); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**MEDICAL HISTORY**

On November 26, 1996, Plaintiff was admitted to Forest View Psychiatric Hospital to treat "moderate to severe depression with associated suicidal ideation." (Tr. 132-41). Plaintiff responded favorably to treatment (counseling and medication) and was discharged on December 6, 1996. (Tr. 122-31). Her GAF score was rated as 67.[1] (Tr. 130).

Plaintiff continued taking medication and participating in counseling. Treatment notes dated March 13, 1997, reveal that Plaintiff was "doing very well" and that her mood was "much more stable." (Tr. 170). Treatment notes dated May 8, 1997, reveal that she was "doing very well." (Tr. 165). Treatment notes dated July 31, 1997, again reveal that Plaintiff was "doing very well." (Tr. 157).

On November 24, 1997, Plaintiff, "extremely depressed" over the recent break up with her boyfriend, "attempt[ed] suicide by cutting her wrists." (Tr. 150). She was hospitalized for five days. *Id.* Treatment notes, dated January 15, 1998, reveal that Plaintiff "suffers from a lot of anger and not so much depression but terrific anger." (Tr. 148).

On July 20, 2000, Plaintiff was examined by Tammi Kolski, Limited Licensed Psychologist. (Tr. 323-25). The results of a mental status examination were unremarkable. (Tr. 323). Kolski identified Plaintiff's "primary problem" as "anger management" and her "secondary problem" as "depression." (Tr. 324-25). Plaintiff was diagnosed with dysthymic disorder and her

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). A score of 67 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

current GAF score was rated as 41-50.[2]  (Tr. 324).  Kolski rated Plaintiff's "prior" GAF score as 61-70.  Kolski recommended to Plaintiff that she participate in bi-monthly counseling sessions.  *Id.*  However, Plaintiff attended only four sessions before discontinuing treatment.  (Tr. 322).

On December 3, 2003, Plaintiff participated in a consultive examination conducted by Stuart Quirk, Ph.D. and George Ronan, Ph.D.  (Tr. 187-91).  Plaintiff reported that she was disabled because she was "depressed all the time."  (Tr. 187).  Plaintiff also reported that she experiences panic attacks and suicidal thoughts.  Plaintiff acknowledged, however, that she was not receiving any treatment for her emotional impairments.  *Id.*  During the examination Plaintiff described experiencing symptoms of depression and "appeared to have a wide range of affect ranging from irritable and angry to happy and engaged."  (Tr. 189).  Plaintiff was diagnosed with: (1) major depressive disorder, moderate; (2) panic disorder without agoraphobia; and (3) borderline personality disorder, with paranoid traits.  (Tr. 191).  Her GAF score was rated as 48.  *Id.*

On January 15, 2004, John Gallagher, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  (Tr. 101-16).  Determining that Plaintiff suffered from: (1) major depressive disorder - moderate; (2) panic disorder without agoraphobia; and (3) borderline personality disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Sections 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders), and 12.08 (Personality Disorders) of the Listing of Impairments.  (Tr. 102-10).  The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments.  (Tr. 111).  Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily

---

[2]  A GAF score of 41-50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning."  DSM-IV at 34.

living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Gallagher also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 117-19). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was "not significantly limited" or that there existed "no evidence of limitation in this category." (Tr. 117-18). The doctor concluded that Plaintiff was "capable of [performing] simple repetitive tasks on a sustained and effective basis." (Tr. 119).

On September 3, 2004, Plaintiff resumed counseling treatment with Tammie Kolski. (Tr. 321-22). Plaintiff reported that she was tense, irritable, anxious, and "stressed all the time." (Tr. 321). She reported that she "gets angry if things do not go her way or if something has happened that she was not anticipating." Plaintiff also reported "having fits over nothing" and experiencing "panic attacks and flipping out." *Id.* The results of a mental status examination revealed that Plaintiff exhibited a "flat" affect, but was otherwise unremarkable. (Tr. 322). Kolski reported that Plaintiff "identifies difficulties with anger and anxiety and presents with depression, although her moods did not necessarily reflect any of these in the assessment." Plaintiff was diagnosed with dysthymic disorder with indications of anxiety. Her GAF score was rated as 49. *Id.*

October 7, 2004 treatment notes authored by Tammi Kolski, reveal that Plaintiff had failed to begin taking her prescribed medication. (Tr. 320). Kolski reported that Plaintiff's treatment would "continue to focus on ways to decrease [her] anger." *Id.*

6

On November 1, 2004, Plaintiff was examined by Kolski. (Tr. 319). Plaintiff reported that she was now taking her prescribed medication. Kolski reported that Plaintiff "did not appear as depressed today as she has in the past." Kolski further observed that Plaintiff laughed, smiled, and "was more relaxed." *Id.*

On December 30, 2004, Plaintiff was examined by Kolski. (Tr. 318). Plaintiff reported that "if people do not do things as I want them to or expect them to then I end up getting angry." Kolski challenged Plaintiff's "expectations of others." Kolski reported that the "session was more confrontational than most and when Heidi was challenged to look at life from the perspective of how she tends to be her own worst enemy, she provided many excuses." *Id.* Plaintiff failed to attend her next scheduled session with Kolski and never returned to Kolski for treatment. (Tr. 317).

On July 11, 2005, Plaintiff completed a report describing her activities. (Tr. 95-100). Plaintiff reported that on a typical day she eats, watches television, washes dishes, and washes laundry. (Tr. 95). Plaintiff also reported that she drives, cooks, shops, cares for her children, plays cards, and talks on the telephone. (Tr. 97-98). In response to a question asking what she likes to talk about, Plaintiff reported that "I usually don't talk I yell & scream at my husband and kids. I'm always annoyed and on the edge." (Tr. 95). In response to a question asking how she responds to those in authority, Plaintiff reported that "I don't really listen I have to have things my way or I have fits and hurt myself and scream and cry." (Tr. 96).

At the administrative hearing, Plaintiff testified that she was unable to work because she "just can't handle it on a day to day basis." (Tr. 374). She also reported, however, that she had previously worked at a restaurant and retail store for approximately one year each. (Tr. 368-70). Plaintiff reported that she discontinued her counseling treatment because her "insurance won't cover

7

it." (Tr. 378). However, when asked whether she had sought assistance or treatment though "community" resources, Plaintiff responded that she had not. *Id.* Plaintiff also testified that she was unable to attend counseling sessions because she did not own a car. (Tr. 391-92). However, when asked how she had been able to attend college, Plaintiff reported that she "drove or my husband took me." (Tr. 392-93). Plaintiff testified that "every other day. . .I throw fits and beat myself up." (Tr. 381). When asked to describe these "fits," Plaintiff reported that "I throw myself against walls, cupboards, I punch myself, I pull my hair, I dig, I try and cut myself, and I scream." *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[3] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B.  The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) depressive disorder; (2) anxiety-related disorder; and (3) borderline personality disorder. (Tr. 17). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-20). The ALJ determined that Plaintiff has no past relevant work experience, but that there nonetheless existed a significant number of jobs which she could perform despite her limitations. (Tr. 20-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1.  The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning

9

capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

   With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can perform only simple, routine, and repetitive tasks; and (2) she can have only occasional contact with the general public, co-workers, and supervisors. (Tr. 20). With respect to Plaintiff's mental impairments, the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 19-20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

   The ALJ determined that Plaintiff had no past relevant work experience, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Roy Welton.

The vocational expert testified that there existed approximately 8,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 403-05). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (evidence that there existed 2500 jobs "within the local region" represents a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (evidence that there existed 1350-1800 jobs "in the region" of the claimant's residence represents a significant number).

a.   The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts a sole issue on appeal, namely that the ALJ "committed reversible error by not properly considering the opinion of Plaintiff's treating psychologist and of a consulting psychologist." Plaintiff asserts that the ALJ failed to "give good reasons" for discounting the opinions of her care providers.

As the ALJ correctly observed, however, "no medically acceptable treating source (or for that matter, any treating source) has offered an opinion statement concerning [Plaintiff's] ability to perform basic work activities during the relevant period." (Tr. 20). In support of her argument, Plaintiff relies exclusively on the GAF scores articulated by Tammi Kolski and Drs. Quirk and Ronan. However, as Defendant correctly asserts, GAF scores do not constitute medical opinions. While the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Commissioner of Social Security*, 167 Fed.

11

Appx. 496, 511 (6th Cir., Feb. 9, 2006) (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)).  Thus, Plaintiff's claim fails because she has failed to identify any medical opinion to which the ALJ failed to properly defer.  Moreover, to the extent that Plaintiff's argument is interpreted as instead challenging the ALJ's RFC determination, the result is the same.

As noted above, following a December 3, 2003 examination, Drs. Quirk and Ronan reported Plaintiff's GAF score as 48.  On September 3, 2004, Kolski reported Plaintiff's GAF score as 49.  A GAF score of 48 or 49 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning."  Plaintiff asserts that these GAF scores demonstrate that she is disabled to an extent beyond that recognized by the ALJ's RFC determination.  Plaintiff further asserts that these GAF scores constitute "the only truly relevant evidence in the record."

The Court disagrees and finds that the record contains substantial relevant evidence supporting the ALJ's RFC determination.  As the ALJ correctly observed, Plaintiff's "mental health treatment since October 2002 (her alleged disability onset date) "has been notably infrequent and irregular."  (Tr. 21).  The record reveals that Plaintiff has in the past responded quite favorably to medication, but has not always taken her medication as prescribed.  (Tr. 319-20).  Dr. Gallagher's assessment of Plaintiff's impairments and limitations is entirely consistent with the ALJ's RFC determination.  (Tr. 101-17).  In fact, the doctor specifically observed that Plaintiff was "capable of [performing] simple repetitive tasks on a sustained and effective basis."  (Tr. 119).  As previously noted, none of Plaintiff's care providers ever reported that Plaintiff was impaired to an extent beyond that recognized by the ALJ.  Finally, as the ALJ correctly concluded, Plaintiff's subjective

allegations of extreme impairment and limitation are inconsistent with the medical record.  In sum, the Court finds that there exists substantial evidence to support the ALJ's RFC determination.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 10, 2008                                  /s/ Ellen S. Carmody                        
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge

13